IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *ex rel* RICHARD J. SHEPPARD, <br> <br> **Plaintiff,** <br> <br> vs. <br> <br> PATHWAY OF BALDWIN COUNTY, <br> LLC and PATHWAY, INC., <br> <br> **Defendants.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 17-00355-KD-N <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER**

This action is before the Court on Defendants Pathway of Baldwin County LLC (PBC) and Pathway, Inc.'s Renewed Motion for Judgment as a Matter of Law, or in the alternative, Motion for New Trial (doc. 162). Upon consideration, and for the reasons set forth herein, the Motion is DENIED.

A. <u>Renewed Motion for Judgment as a Matter of Law</u>

"Judgment as a matter of law is appropriate only if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the'" non-moving party. <u>Action Nissan, Inc. v. Hyundai Motor Am.</u>, No. 22-13153, 2024 WL 3888756, at *5 (11th Cir. Aug. 21, 2024) (citing Fed. R. Civ. P. 50(a)). "'Only the sufficiency of the evidence matters; what the jury actually found is irrelevant.'" <u>Id</u>. (quoting <u>Hubbard v. BankAtlantic Bancorp, Inc</u>., 688 F.3d 713, 724 (11th Cir. 2012)). The court must "view[] the evidence in the light most favorable to the non-moving party." <u>Id</u>. (quoting <u>Howard v. Walgreen Co.,</u> 605 F. 3d 1239, 1242 (11th Cir. 2010)). Overall, "[j]udgment as a matter of law is appropriate only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." <u>Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC,</u> 932 F.3d 1303, 1310 (11th Cir.

2019). Thus, the court should not "disturb a jury's verdict unless 'there is no legally sufficient evidentiary basis for a reasonable jury to find' for the party on that issue." Action Nissan, Inc., 2024 WL 3888756, at *5 (quoting Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (internal quotation marks and citation omitted)).  Also, a "Rule 50(b) motion is merely a renewal of a previously asserted motion brought under Rule 50(a), and 'thus a district court can grant a Rule 50(b) motion "only on grounds advanced in the preverdict Rule 50(a) motion." ' " Id. (quoting McGinnis v. Am. Home Mortg. Servicing, Inc., 817 F.3d 1241, 1260 (11th Cir. 2016) (alterations adopted) (quoting Fed. R. Civ. P. 50 advisory committee's note to 2006 amendment)).

    1. Sufficiency of the evidence as to retaliation

The False Claims Act identifies two types of protected activity: "lawful acts done … in furtherance of an action under" the FCA or "other efforts to stop" violations of the FCA.  31 U.S.C. § 3730(h)(1).  Defendants argue that Sheppard, "… 'who argues that [his] conduct was in the form of 'other efforts" to stop a FCA violation must at least show that [he] had an objectively reasonable belief that [his] employer violated the FCA to establish that [he] engaged in protected activity.'" (doc. 162, p. 2).  Defendants assert that belief that the employer committed legal or ethical violations, or fraud, or misuse of federal funds is not sufficient because the employee must reasonably believe that the employer has submitted a false or fraudulent claim to the federal government (Id.).

Defendants argue that the evidence Sheppard submitted at trial was not sufficient for a reasonable jury to find that he had an objectively reasonable belief that PBC had made false claims for payment with the Alabama Medicaid Agency based upon false or fraudulent Basic Living Skills (BLS) sheets (Id., p. 4).  Defendants argue that Sheppard's trial testimony established only that he knew that BLS sheets were placed in a box in the PBC office, that he had

2

no evidence or knowledge of the process thereafter, and consequently no evidence "of any BLS sheets or any other document that was fraudulent that was submitted by PBC to Medicaid for payment" (Id., p. 4-5, citing doc. 159, p. 52-59).

Defendants point out that Sheppard admitted that PBC had a review process that would find mistakes in BLS sheets and that completing a BLS sheet is only the initial step in the process of making a claim for payment with Medicaid, and therefore "the fact that a BLS sheet is found to be inaccurate, false, or otherwise non-compliant with Medicaid regulations is not evidence that a false claim was ever submitted to Medicaid for payment" (Id., p. 5).  As a result, Defendants argue that Sheppard did not have "an objectively reasonable belief that PBC ultimately submitted false claims for payment." (Id.).

Defendants also argue that Sheppard's testimony regarding statements by other employees regarding corrections to BLS sheets does not support a finding that he had an objectively reasonable belief that false claims were actually submitted to Medicaid.  Instead, they argue that the evidence indicates that his belief or assumption was speculative and he had no evidence, but for his allegations of corrections, falsifications, or additions to BLS sheets which were based on the employee statements.

Viewing the evidence in the light most favorable to Sheppard, the Court finds that the evidence was sufficient for a jury to find that Sheppard had an objectively reasonable belief that false claims were submitted to Medicaid. Albeit that Sheppard admitted a lack of knowledge as to the entire Medicaid billing process, he presented evidence that BLS sheets were a primary and important starting point and that employees were allowed or encouraged to correct or amend BLS sheets in a manner that caused him to believe that false claims were submitted.  The facts and inferences do not point overwhelmingly in favor of the Defendants such that a reasonable jury could not decide in favor of Sheppard on this issue.

2. <u>Defendants' awareness of protected activity</u>

Defendants argue that "Sheppard failed to present sufficient evidence for a reasonable jury to find that Pathway was aware of any protected activity by Sheppard" and therefore, he cannot establish a causal connection between his protected activity and the adverse employment actions (doc. 162, p. 8-11). Defendants point out that Sheppard admitted at trial that he "expressed his concerns" with a Targeted Case Manager (TCM), but when questioned by Defendants' employees, Sheppard repeatedly denied any knowledge of or concerns with Medicaid fraud. Defendants point out that all employees testified at trial that no one had complained "regarding allegations of padding time, forging signature, or making up details on BLS document" (Id.).

The Court disagrees that the evidence was insufficient to establish Defendants' awareness of Sheppard's protected activity. Specifically, there was evidence that the Executive Director of Pathway of Baldwin County LLC, Kimberly Fail, specifically questioned Sheppard regarding his allegations of Medicaid fraud made to a TCM.

Sheppard testified at trial that he talked with a TCM, a case manager for the State of Alabama, about the possible falsification of documents for submission to Medicaid (doc. 159, p. 35). He testified that the TCM told him to contact the Alabama Medicaid office (Id.). Sheppard testified that he contacted an Alabama Medicaid investigator who told him an investigation would start and not to talk to anyone about the investigation (Id., p. 37).

Soon after, on March 28, 2017, he was called to the office for a meeting with Fail (Id., p. 36). Sheppard testified that Fail told him a "female" had told her about Sheppard's conversation with the TCM and that Sheppard "said something about Medicaid fraud" (Id.) Sheppard

4

testified that during this meeting he consistently said "I don't know what you are talking about" as advised by the Medicaid investigator (Id., p. 36-38)

On March 29, 2017, the next day, Fail again questioned Sheppard (Id. p. 38). He testified that although some other issues were discussed, "it was just 95 percent about what [Fail] had heard about this – from this person about me and Medicaid fraud" (Id., p. 39). Sheppard testified that he was called to meet with Fail "several more times" and that at one of these meeting, another PBC employee, Beth Aaron was present (Id., p. 38-39). Again, Sheppard did not tell the employees about what he told Medicaid or the TCM (Id., p. 40). Sheppard testified that he was suspended, and Fail told him not to return until he could answer the questions about the Medicaid fraud or the investigation (Id., p. 40-41).

Sheppard testified that he was called to return on April 4, 2017, and met again with Fail (Id., p. 44). Also, Sheppard and Fail discussed changing his shift to the night shift and Sheppard expressed concern because of his part-time job and issues with his son (Id., p. 45-46). He was placed on a five-day suspension for the issues with the BLS form and other incidents at work (Id. p. 44-45). He testified that Fail called him back to work on April 12, 2017, and he worked "a few nights" (Id., p. 48). Then, on April 16, 2017, he was called at home and terminated over the phone. Sheppard returned on April 17, 2017, to sign documents regarding the termination (Id.).

Fail testified at trial that the TCM's Supervisor told Fail about the conversation between the TCM and Sheppard. Fail testified that, based on what the Supervisor told her, she believed Sheppard had told the TCM that he was passed over for a promotion for refusing to do something that he considered fraudulent, but not Medicaid fraud. However, Plaintiff's Exhibit 20 – Fail's memorandum regarding meetings with Sheppard from March 29, 2017 through April 17, 2017 - indicated that she talked with Sheppard about his report of Medicaid fraud.

Based upon the testimony at trial, a reasonable factfinder could conclude that Defendants were aware of Sheppard's protected activity of reporting what he believed to be Medicaid fraud.

### 3. Sheppard's adverse treatment because of his protected activity

Defendants argue that Sheppard has "failed to present sufficient evidence for the jury to find that he suffered an adverse employment action or was terminated because of his alleged protected activity" (doc. 162, p. 11). Defendants argue that the evidence showed that Sheppard's admitted misconduct (refusing to work the night shift and issues with the BLS form) violated PBC policies and provided legitimate grounds for discipline and termination without regard to his alleged protected activity.

The Court finds that the evidence at trial was sufficient for a reasonable jury to find that Sheppard was suspended and ultimately terminated because of his statutorily protected activity. Sheppard presented evidence of the temporal proximity between his protected activity and the series of adverse employment actions- the two suspensions and the termination. The close proximity of this series of events – spanning from March 28 to April 16, 2017 - could reasonably support the jury's decision. See Valdes v. Kendall Healthcare Grp., Ltd., No. 23-12983, 2024 WL 3356965, at *4 (11th Cir. July 10, 2024) ("Our Court has held that a one-month period between the protected activity and the adverse action is not too protracted, but a 3-to-4-month delay is too long. … Yet, 'mere temporal proximity, without more, must be very close.'") (citation omitted).

### 4. Pathway, Inc.

Defendants argue that Sheppard failed to present sufficient evidence for the jury to find that PBC and Pathway, Inc. are a single employer such that Pathway, Inc. would be liable (doc.

6

162, p. 13). Defendants argue that the evidence presented, including the trial testimony of PBC Director Kimberly Fail and Pathway CEO Joe Peeples, established that Fail had exclusive control over employment decisions including terminations at PBC, and that there was no centralized control of labor relations, no common management, no common financial control, and no interrelation of operations between the entities. Defendants also argue that evidence that PBC is a subsidiary of Pathway, Inc., is not sufficient for the jury to find that the entities are a single employer.

The Court of Appeals for the Eleventh Circuit has recognized three theories by which "multiple entities may be aggregated as employers: (1) the single employer/integrated enterprise; (2) joint employers; and (3) the agency relationship." Womochil v. Averette Co., Inc., No. 2:22-CV-00321-RDP, 2024 WL 714301, at *4 (N.D. Ala. Feb. 21, 2024). And that "[r]egardless of what test applies, the key question is 'the degree of control an entity has over the adverse employment decision' at issue in the case." Womochil, 2024 WL 714301 at* 4 (quoting McQueen v. Wells Fargo Home Mortg., 955 F. Supp. 2d 1256, 1271-72 (N.D. Ala. 2013) (quoting Llampallas v. Mini-Circuits, Labs, Inc., 163 F.3d 1236, 1244-45 (11th Cir. 1998)).

The "single employer" or "integrated enterprise" test applies when "two ostensibly separate entities are 'highly integrated with respect to ownership and operations." Womochil, 2024 WL 714301 at* 4 (citing Lyes v. City of Riviera Beach, Fla., 166 F.3d 1332, 1341 (11th Cir. 1999)). For this test, the Eleventh Circuit has recognized the following factors: "'(1) the degree of interrelatedness of operations, (2) the degree of centralized control of labor relations, (3) the presence of common management, and (4) common ownership or financial control.'"[1]

---

[1] The factors were promulgated by the NLRB for cases under the National Labor Relations Act. Radio and Television Broad. Technicians Loc. Union 1264 v. Broad. Serv. of Mobile, Inc., 380 U.S. 255, 256 (1965).

7

Womochil, 2024 WL 714301 at *4 (quoting Virciglio v. Work Train Staffing, LLC, 674 Fed. Appx. 879, 889 (11th Cir. 2016)).

Here, the jury was instructed that it must determine whether Pathway, Inc. and PBC were a single, integrated enterprise or single employer and that to do so, the jury should consider the four factors as listed above. The jury was also instructed that the most significant factor was whether there was centralized control of labor relations, and more specifically, whether Pathway, Inc. had control over the adverse employment decisions at issue.

Viewing the evidence in the light most favorable to Sheppard, the Court finds that the evidence was sufficient for reasonable jury to find that Pathway, Inc. and PBC were a single, integrated, enterprise or employer.  Testimony was elicited from which a reasonable jury could find that there was a centralized control of labor relations, the second factor, and that Pathway, Inc. had control over the adverse employment decisions at issue in this action. At trial, Sheppard elicited testimony from Fail that Peeples was her immediate supervisor.  Also, Sheppard presented evidence that Fail, via a series of e-mails, informed Peeples of the events occurring with Sheppard and consulted Peeples before making her decisions to suspend or terminate him. Fail admitted that she asked Peeples whether Sheppard's conduct merited termination. Fail also testified that in the series of conversations, she discussed with Sheppard that if she was not addressing his needs, he could go the next level up and talk to Peeples.

Peeples testified that he interviewed and hired Sheppard. He also testified that Fail was the final-decisionmaker at PBC, but she reported directly to him. He testified that, via the same series of e-mails, Fail informed him of the events occurring with Sheppard, and that as her supervisor and CEO of Pathway, Inc., he suggested a course of action. He testified that Fail followed his instructions as to Sheppard, even though she was not required to do so.

8

As to the remaining factors, Peeples testified that PBC was owned 100% by Pathway, Inc., and did not have officers or a board of directors. Peeples testified that PBC had adopted the policies of Pathway, Inc. but PBC had authority to change its policies. Fail testified that PBC did not have its own website but instead a page on Pathway, Inc.'s website. Thus, sufficient evidence was presented from which a reasonable jury could find that PBC and Pathway, Inc., were an integrated or single employer.

B. Motion for new trial

The court may grant a motion for "a new trial on all or some of the issues ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "A judge should grant a motion for a new trial when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Tracy v. Fla. Atl. University Board of Trustees, 980 F. 3d 799, 811-812 (11th Cir. 2020) (citation omitted). "New trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1312–13 (11th Cir. 2013) (citations omitted).

Defendants argue that the Court committed error meriting a new trial by allowing inadmissible hearsay testimony. Specifically, Sheppard's "testimony regarding what other employees, named and unnamed, purportedly said" (doc. 162, p. 15). Defendants argue that Sheppard failed to make a proper foundation to show that their statements were "made by an agent or servant of Pathway authorized to make such a statement or that such statements 'concerned' a matter within the scope of the speaker's agency or employment" and therefore, admissible under an exception to hearsay for admissions by a party opponent found in Fed. R.

9

Evid. 801(d)(2)(D). Defendants assert that "[w]ithout the proper predicate for the exception to the hearsay rule, allowing these hearsay statements into evidence was error." (Id., p. 16).

Fed. R. Evid. 801(d)(2)(D) states as follows:

(d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay: . . . (2) An Opposing Party's Statement. The statement is offered against an opposing party and: … (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]

With respect to a proper predicate, the Eleventh Circuit has explained that "[c]ourts have admitted employee statements under Rule 801(d)(2)(D) 'where there is some evidence that the statements reflected some kind of participation in the employment decision or policy of the employer.'" Calvert v. Doe, 648 F. App'x 925, 927 (11th Cir. 2016) (quoting Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir.2005)). And "it is necessary that the content of the declarant's statement concern a matter within the scope of his employment or agency." City of Tuscaloosa v. Harcros Chems., 158 F.3d 548, 558 n.10 (11th Cir. 1998).

At trial, in support of his position that he had an objectively reasonable belief that violations of the False Claims Act had occurred, Sheppard testified that Defendants had a process where its supervisors would alter and sign forms for submission to Medicaid in a manner which he believed was illegal or improper. He also testified as to statements made to him by supervisors, group leaders, and other employees regarding this process (doc. 159, p.14-21, 20-21). Defendants did not object to testimony regarding statements made by two supervisors, Tyrone Hartley (Hartley denied any knowledge) and Shayna Staska (who did not testify), and

10

testimony regarding statements made by Director Kimberly Fail (Fail denied any knowledge), as hearsay (Id., p. 14-20). [2]

However, Defendants raised a hearsay objection to Sheppard's testimony regarding statements to him by Jason Bryers and Hailie Crenshaw (Id., p. 20). At the bench conference on the objection, Sheppard argued that he was not offering the evidence for the truth of the matter asserted, but to show his state of mind. (Id., p. 21) Specifically, that he had a reasonable belief that Defendants had violated the False Claims Act. (Id.) The Court disagreed and asked if another exception to hearsay – for an agent of Pathway speaking on its behalf – would render the evidence admissible. (Id., p. 22). The parties then argued whether Crenshaw was a supervisor such that she may be an agent and her statement that of a party opponent. Defendants argued that Sheppard had to make this predicate for her testimony to fall within this exception to the hearsay rule (Id., p. 21-25).

Ultimately, with the issue of Crenshaw's status unresolved – with Sheppard asserting that she was a supervisor and Defendant asserting that she was not - the Court allowed Sheppard to answer a general question which did not name the employees or their respective positions - "Did you talk to other employees of Pathway of Baldwin County that confirmed your belief that this was going on?" Defendants' hearsay objection was overruled, and Sheppard answered "Yes". (Id., p. 25). Thus, after Sheppard's testimony regarding the information he obtained from Hartley, Staska, and Fail, the Court allowed only Sheppard's "Yes" answer to this question.

Based on the foregoing, the Court finds no substantial or prejudicial error that would warrant a new trial because the Court allowed Sheppard to answer the question. The verdict was not against the great weight of the evidence. The jury had heard Sheppard's direct testimony as

---

[2] Defendants later assert that they raised a hearsay objection to Sheppard's testimony regarding what Staska told him (doc. 159, p. 123). The Court stated that Staska was a "party opponent so it came into evidence" (Id., p. 124).

11

to his conversations with Hartley and Staska regarding the process, his cross-examination, and the trial testimony by Hartley and Fail. Accordingly, Defendants' motion for new trial is denied.

C. Conclusion

Upon consideration, and for the reasons set forth herein, the renewed motion for judgment as a matter of law is denied and the motion for new trial is denied.

DONE and ORDERED this the 10th day of October 2024.

                                            s/Kristi K. DuBose
                                            KRISTI K. DuBOSE
                                            UNITED STATES DISTRICT JUDGE